FILED
FEB 11 2026
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**SAMANTHA GEMMA,**

**Plaintiff,**

**v.** **Civil Action No. 3:26-cv-00095**

**FREEDOM MORTGAGE CORPORATION,**

**Defendant.**

## COMPLAINT FOR VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (12 U.S.C. § 2605) AND REGULATION X (12 C.F.R. PART 1024)

Plaintiff Samantha Gemma, alleges as follows:

### I. JURISDICTION AND VENUE

1. This action arises under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, and its implementing regulation, Regulation X, 12 C.F.R. Part 1024.
2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.
3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the subject property is located in Virginia, Defendant services mortgage loans in this District, and a substantial part of the events giving rise to the claims occurred within this District.

### II. PARTIES

4. Plaintiff Samantha Gemma is a consumer and the borrower on a federally related, FHA-insured mortgage, Loan No. 0148444433, secured by residential real property located in Fredericksburg, Virginia.
5. Defendant Freedom Mortgage Corporation ("Freedom") is a mortgage loan servicer as defined by 12 U.S.C. § 2605(i)(2) and, at all relevant times, serviced Plaintiff's mortgage loan.

## III. FACTUAL ALLEGATIONS

6. Plaintiff's mortgage loan is insured by the Federal Housing Administration ("FHA") and is therefore subject to the error-resolution, loss-mitigation, and foreclosure-protection requirements imposed by RESPA and Regulation X. Because the loan is FHA-insured, Defendant's loss-mitigation evaluation was also required to comply with mandatory FHA servicing guidelines governing the sequencing, evaluation, and documentation of forbearance, partial claim, and modification options. At all relevant times, Freedom was responsible for receiving, evaluating, and deciding Plaintiff's loss-mitigation applications and for responding to Plaintiff's written Notices of Error in compliance with Regulation X.
7. Freedom has been provided Plaintiff's application materials and related documentation in the ordinary course of loss-mitigation review and through Plaintiff's written correspondence.

### A. August 2025 Underwriting Research Request

8. On or about August 25, 2025, Plaintiff contacted Freedom to request an explanation for Freedom's refusal to review for a forbearance based on financial hardship.
9. As a result, Freedom submitted an internal underwriting research request on August 25, 2025 in connection with that request.
10. On August 27, 2025, during a recorded telephone call, Freedom representative Jackie (Representative ID No. 6149) verbally read the internal underwriting determination to Plaintiff.
11. During that call, Jackie stated that underwriting had determined Plaintiff did not qualify for an informal forbearance because the loan was sixty-one (61) or more days past due.

12. The underwriting research request and determination had been submitted internally on August 25, 2025 and reviewed by underwriting on or about August 26, 2025, as conveyed to Plaintiff during the August 27, 2025 call.
13. Plaintiff requested that the underwriting determination denying eligibility due to the loan being sixty-one (61) or more days past due be provided in writing.
14. Nearly three (3) months after Plaintiff's request, Freedom eventually conceded this underwriting determination in writing. In a letter dated November 11, 2025, Freedom stated that '[o]n August 26, 2025, the account did not qualify for an Informal Forbearance as the loan was more than 61+ days past due,' thereby corroborating the underwriting decision verbally disclosed to Plaintiff during the August 27, 2025 recorded call.
15. Despite that underwriting determination, Freedom subsequently issued an informal forbearance covering October 1, 2025 through November 30, 2025, without rescinding or revising the prior determination, or explaining the contradiction.
16. Freedom never reconciled or explained how Plaintiff was both ineligible for an informal forbearance due to being sixty-one (61) or more days past due and, simultaneously, approved for an informal forbearance covering the same delinquency period.
17. This contradictory treatment formed part of the broader pattern of inconsistent, unsupported, and procedurally defective servicing conduct that continued throughout the loss-mitigation process.

**B. September 2025 Loss-Mitigation Application**

18. On September 14, 2025, Plaintiff submitted a 94-page loss-mitigation application to Freedom by electronic mail citing financial hardship.

19. On September 19, 2025, Freedom issued written correspondence stating that Plaintiff's application was facially complete and that all possible loss-mitigation options would be reviewed, triggering foreclosure protections under 12 C.F.R. § 1024.41. That correspondence constituted an acknowledgment under 12 C.F.R. § 1024.41(b)(2) that Plaintiff had submitted a complete loss-mitigation application, thereby triggering Defendant's obligation to conduct a full evaluation and prohibiting retroactive reclassification absent new information.
20. On September 30, 2025, Freedom issued a letter approving a temporary forbearance plan but simultaneously describing the same September 14 application as an incomplete loss-mitigation application.
21. On October 6, 2025, Freedom sent another letter stating that Plaintiff's application was incomplete and demanding a telephone interview to obtain answers regarding Plaintiff's reason for default, debt, and other case information in order to complete the application.
22. Plaintiff complied and, on or about October 8, 2025, participated in a recorded telephone call during which the requested questions were answered and Freedom's representative confirmed that the application could proceed to review.
23. Despite that, Freedom later issued additional incomplete notices demanding the same information again. Plaintiff then restated the same responses in writing in a Formal Demand to Continue Loss Mitigation Review dated December 8, 2025, attached as Exhibit A.

**C. Notices of Error Regarding Improper Handling of Loss-Mitigation**

24. On September 17, 2025, Plaintiff submitted a written Formal Request and Notice of Error pursuant to 12 C.F.R. § 1024.35 ("NOE 1"), disputing Defendant's improper removal of

the loan from loss-mitigation status and its failure to conduct a proper review of Plaintiff's September 14, 2025 loss-mitigation application. NOE 1 identified servicing errors including (1) removing the loan from active loss-mitigation review despite receipt of a new application; (2) improperly treating the September 14 application as a duplicate rather than conducting a new evaluation; and (3) failing to provide timely and accurate written acknowledgment as required by Regulation X.

25. On October 6, 2025, Plaintiff submitted a second written Notice of Error ("NOE 2") identifying additional servicing errors related to Defendant's continued cycling of the same loss-mitigation application between complete and incomplete status without identifying any new missing information. NOE 2 further disputed Defendant's demand for duplicative information and its failure to provide clear, consistent, and accurate information regarding the status of the application, in violation of 12 C.F.R. § 1024.35 and 1024.41.

26. On October 10, 2025, Plaintiff submitted a third written Notice of Error ("NOE 3") disputing Defendant's continued failure to correct the same errors and its demand for an oral interview as a condition of completeness despite Plaintiff having already participated in a recorded telephone call on or about October 8, 2025, during which Defendant's representative confirmed that the application could proceed to review.

27. On December 31, 2025, following Defendant's issuance of a loss-mitigation decision letter dated December 30, 2025, Plaintiff submitted a fourth, comprehensive Notice of Error ("NOE 4") identifying Defendant's continued failure to correct or meaningfully respond to NOE 1, NOE 2, and NOE 3. NOE 4 further alleged that Defendant (1) failed to provide timely and substantive written responses to the prior Notices of Error; (2)

issued a loss-mitigation decision containing internally contradictory determinations regarding Plaintiff's hardship and ability to pay; (3) mischaracterized or inaccurately attributed Plaintiff's financial statements; (4) selectively evaluated certain FHA loss-mitigation options while leaving others unevaluated; and (5) engaged in systemic procedural manipulation by repeatedly cycling the same application between complete and incomplete status over several months.

28. Defendant failed to conduct a reasonable investigation or provide any substantive correction or explanation as required by 12 C.F.R. § 1024.35(e).

**D. December 30, 2025 Loss-Mitigation Decision Letter**

29. On December 30, 2025, Freedom issued a written loss-mitigation decision letter to Plaintiff ("Decision Letter"), attached as Exhibit B.

30. In the Payment Plans section, the Decision Letter denied forbearance on the ground that the hardship reason provided on your application has been resolved.

31. In the Retention Solutions section, the Decision Letter (a) denied a standalone FHA partial claim on the basis that The Borrower has indicated that they do not have the ability to either resume or make increased payments; (b) approved a Standalone Loan Modification requiring trial payments of $3,854.89 per month at a 6.625% interest rate higher than Plaintiff's pre-existing obligation; and (c) left the combination loan modification and partial claim and payment-supplement partial claim options "Un-Evaluated."

32. The Decision Letter therefore simultaneously stated that Plaintiff's hardship had been resolved to deny forbearance and that Plaintiff lacked the ability to resume or increase

payments to deny partial claim, while approving a modification increasing Plaintiff's monthly payment obligation, without explaining or reconciling these contradictions.

33. The Decision Letter referenced a right to appeal within 14 days but did not cure or address the prior completeness-status cycling, duplicative information demands, or the failure to evaluate all FHA loss-mitigation options.

**E. CFPB Complaint and Continued Noncompliance**

34. On or about January 1, 2026, Plaintiff submitted a complaint to the Consumer Financial Protection Bureau, Complaint No. 260101-27339881, describing Freedom's handling of the September 14 application, the repeated complete/incomplete determinations, the contradictory findings in the Decision Letter, and Freedom's failure to respond to Plaintiff's Notices of Error.

35. Despite the CFPB complaint and Plaintiff's Notices of Error and Formal Demand (Exhibit A), Freedom did not correct the identified errors, rescind the defective Decision Letter (Exhibit B), or conduct a compliant loss-mitigation review.

## IV. CAUSES OF ACTION

**COUNT I: Violation of RESPA and Regulation X – Failure to Properly Respond to Notices of Error (12 U.S.C. § 2605(e); 12 C.F.R. § 1024.35)**

36. Plaintiff incorporates the preceding paragraphs 1–35 as if fully set forth herein.

37. Plaintiff submitted multiple written Notices of Error: NOE 1 dated September 17, 2025; NOE 2 dated October 6, 2025; NOE 3 dated October 10, 2025; and NOE 4 dated December 31, 2025, identifying servicing errors including improper removal from loss-mitigation status, contradictory completeness determinations, mischaracterization of borrower statements, and issuance of a defective loss-mitigation decision.

38. The errors identified fall within the categories enumerated in 12 C.F.R. § 1024.35(b), including § 1024.35(b)(1), § 1024.35(b)(5), and § 1024.35(b)(11).

39. Although Freedom sent initial acknowledgment notices to NOE 1–4 as permitted under 12 C.F.R. § 1024.35(d), it failed to conduct a reasonable investigation or provide complete written responses—either correcting the identified errors or explaining why with copies of relevant documents—within 30 business days (or 45 with extension notice stating reasons) as required by § 1024.35(e)(1)(i), (e)(3)(i)(A)–(C). Freedom's responses lacked the required specificity and substance, merely restating prior determinations without addressing the documented inconsistencies.

40. Freedom's conduct violated 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35 and caused Plaintiff actual damages.

**COUNT II: Violation of Regulation X – Improper Loss-Mitigation Evaluation (12 C.F.R. § 1024.41)**

41. Plaintiff incorporates the preceding paragraphs 1–40 as if fully set forth herein.

42. Freedom received a facially complete loss-mitigation application from Plaintiff as of September 19, 2025 but repeatedly and retroactively altered the completeness status of that application without new information, in violation of 12 C.F.R. § 1024.41(b)(1)-(2).

43. Freedom failed to properly evaluate Plaintiff for all available loss-mitigation options as required by 12 C.F.R. § 1024.41(c), including by selectively denying certain FHA programs while leaving others "Un-Evaluated" and by denying forbearance and partial claim on grounds inconsistent with its approval of a higher-payment loan modification.

44. Freedom failed to issue a clear and consistent written notice of its determinations that complied with 12 C.F.R. § 1024.41(d), instead issuing the Decision Letter containing

internally contradictory findings regarding Plaintiff's hardship and ability to pay (Exhibit B).

45. Freedom's conduct violated 12 C.F.R. § 1024.41 and caused Plaintiff actual damages.

**COUNT III: Pattern or Practice of Noncompliance (12 U.S.C. § 2605(f)(1)(B))**

46. Plaintiff incorporates the preceding paragraphs 1–45 as if fully set forth herein.

47. Freedom's repeated failures—across multiple Notices of Error, arbitrary complete/incomplete determinations, duplicative information demands, and the issuance of contradictory loss-mitigation determinations—were not isolated clerical errors. Rather, they consisted of standardized determinations, form correspondence, and template-driven eligibility decisions that were internally inconsistent, temporally contradictory, and detached from Plaintiff's actual loan status.

48. Despite Plaintiff's multiple Notices of Error and formal written demands explicitly documenting these inconsistencies, Defendant failed to reconcile or correct its contradictory positions. Instead, Defendant continued to rely on uniform servicing processes and template communications that repeatedly misapplied loss-mitigation criteria and Regulation X requirements.

49. This conduct—occurring across multiple, distinct servicing functions (including forbearance evaluation, application completeness determinations, loss-mitigation decisioning, and error resolution) over a period of months—plausibly demonstrates systemic deficiencies in Defendant's loss-mitigation and error-resolution procedures. The use of standardized, template-driven servicing processes that generate logically incoherent outcomes (such as denying a forbearance for reasons that contradict its purpose or issuing determinations containing mutually exclusive rationales) constitutes a

pattern or practice of noncompliance with RESPA and Regulation X under 12 U.S.C. § 2605(f)(1)(B).

50. Plaintiff is entitled to statutory damages under 12 U.S.C. § 2605(f)(1)(B).

## V. DAMAGES

51. As a direct and proximate result of Freedom's conduct, Plaintiff suffered actual damages including out-of-pocket costs (postage, copying, and related expenses), time and effort expended responding to Freedom's shifting and duplicative demands and pursuing error resolution, increased delinquency and heightened risk of foreclosure, potential adverse credit impacts, and emotional distress.

52. As a further direct result of Defendant's violations, Plaintiff's delinquency was prolonged and exacerbated, causing additional interest, arrearage, and default-related charges to accrue that would not have accrued absent Defendant's failure to conduct a timely and compliant loss-mitigation review.

53. As a further result of Defendant's conduct, Plaintiff experienced significant emotional distress, anxiety, and depression arising from prolonged uncertainty, repeated contradictory servicing determinations, and the heightened risk of foreclosure, and Plaintiff sought and incurred costs for professional counseling and therapy related to that distress.

## VI. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

a. Declare that Defendant violated RESPA and Regulation X;

b. Award actual damages pursuant to 12 U.S.C. § 2605(f)(1)(A);

c. Award statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

d. Award costs and reasonable attorneys' fees as permitted by law;

e. Award total damages in an amount not less than $25,000; and

f. Grant such other relief as the Court deems just and proper.

JURY TRIAL DEMANDED.

## EXHIBITS

Exhibit A: Plaintiff's Formal Demand dated December 8, 2025.

Exhibit B: Freedom Mortgage Decision Letter dated December 30, 2025.

Respectfully submitted,

By: ______________

Samantha Gemma
8002 S Woods Dr
Fredericksburg, VA 22408
Telephone: 540-207-7452
samanthagemma1@gmail.com
*Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of February, 2026, I sent a true and correct copy of the foregoing Complaint and Exhibits A–B to Freedom Mortgage Corporation, addressed to its counsel of record: Laura May Hooe, Klein Thomas Lee & Fresard, 1051 E Cary Street, Suite 1430, Richmond, VA 23219.

______________

Samantha Gemma
*Plaintiff*