IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SAMANTHA GEMMA,                    )
    Plaintiff,                     )
                                   )
      v.                        )        Civil Action No. 3:26CV95 (RCY)
                                   )
FREEDOM MORTGAGE                   )
CORPORATION,                       )
    Defendant.                     )
                                   )

**MEMORANDUM OPINION**

In this three-count action, Plaintiff Samantha Gemma alleges that Defendant Freedom Mortgage Corporation ("Freedom") violated the Real Estate Settlement Procedures Act (RESPA) and its implementing regulations in the process of evaluating her mortgage loan for loss mitigation. The case is before the Court on Freedom's Motion to Dismiss Plaintiff's Amended Complaint ("Motion to Dismiss"), filed pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking dismissal of all three counts for failure to state a claim. The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will grant the Motion to Dismiss with respect to Counts I and III and deny the Motion to Dismiss with respect to Count II.

**I. PROCEDURAL HISTORY**

Plaintiff filed a warrant in debt against Freedom in the General District Court for Spotsylvania County, Virginia, on or about January 13, 2026. Not. Removal 1, ECF No. 1.

1

Invoking federal question jurisdiction granted by 28 U.S.C. § 1331, Freedom removed the action to this court on February 5, 2026, pursuant to 28 U.S.C. § 1441. *Id.* at 2.

Plaintiff filed the operative Amended Complaint on February 11, 2026. ECF No. 3. Freedom filed its Motion to Dismiss and Memorandum in Support thereof on February 24, 2026. ECF Nos. 4, 5. On February 25, 2026, the Court issued a Roseboro Notice, advising Plaintiff, who is proceeding *pro se*, of the briefing schedule for the Motion to Dismiss and informing her that the motion, if granted, could result in dismissal of some or all of her claims. Roseboro Notice, ECF No. 7. Plaintiff filed a Memorandum in Opposition to the Motion to Dismiss on March 3, 2026.[1] ECF No. 8. Defendant filed its Reply on March 11, 2026. ECF No. 10.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges that she is the borrower on a mortgage loan insured by the Federal Housing Administration and serviced at all relevant times by Defendant. Am. Compl. ¶¶ 4–6. Plaintiff's Amended Complaint describes two series of interactions with Defendant, the first in relation to an underwriting research request and the second pertaining to a loss mitigation application.

On or about August 25, 2025, Plaintiff contacted Freedom to request an explanation for Freedom's refusal to review her eligibility for forbearance based on financial hardship. *Id.* ¶ 8. Freedom submitted an internal underwriting research request that same day. *Id.* ¶ 9. On August 27, 2025, Freedom's representative relayed to Plaintiff by phone that "underwriting had determined Plaintiff did not qualify for . . . informal forbearance because the loan was sixty-one (61) or more days past due." *Id.* ¶ 11. A letter from Freedom to Plaintiff dated November 11,

---

[1] Plaintiff filed a second Memorandum in Opposition to the Motion to Dismiss on March 6, 2026, without explanation. *See* ECF No. 9. Upon review, the Court finds the responses to be substantially similar, if not identical. Accordingly, and because Local Civil Rule 7(F)(1) prohibits the filing of additional briefs without first obtaining leave of court, the Court disregards Plaintiff's second Memorandum in Opposition to the Motion to Dismiss and does not further consider it (nor its attachment) herein.

2025, confirmed this decision in writing. *Id.* ¶¶ 13–14.  Notwithstanding its prior communications, however, "Freedom subsequently issued an informal forbearance covering October 1, 2025, through November 30, 2025, without rescinding or reversing the prior determination, or explaining the contradiction." *Id.* ¶¶ 15–16.

On September 14, 2025, Plaintiff submitted a loss-mitigation application to Freedom, again citing financial hardship. *Id.* ¶ 18.  On September 19, 2025, Freedom notified Plaintiff that her "application was facially complete and that all possible loss-mitigation options would be reviewed" with foreclosure protection under 12 C.F.R. § 1024.41 in place. *Id.* ¶ 19.  Then, on September 30, 2025, Freedom issued a letter approving a temporary forbearance plan that also described the September 14 loss-mitigation application as *in*complete. *Id.* ¶ 20.  Freedom sent an additional letter to Plaintiff on October 6, 2025, seeking a telephone interview "to obtain answers regarding Plaintiff's reason for default, debt, and other case information in order to complete the application." *Id.* ¶ 21. On October 8, 2026, Plaintiff participated in a call during which she answered the questions, and "Freedom's representative confirmed that the application could proceed to review." *Id.* ¶ 22.  However, Freedom "issued additional incomplete notices demanding the same information again." *Id.* ¶ 23.  Plaintiff provided the same responses in writing on December 8, 2025. *Id.*

On December 30, 2025, Freedom issued a loss-mitigation decision letter which (i) determined Plaintiff was not approved for forbearance because the hardship reason provided on her application had been resolved; (ii) determined Plaintiff was not approved for a 30-Year Standalone Loan Modification or a Standalone Partial Claim because Plaintiff indicated she could not resume or make increased payments; (iii) approved a Standalone Loan modification requiring trial payments at an interest rate higher than Plaintiff's pre-existing obligation; and (iv) left two

3

retention solution programs un-evaluated. *Id.* at ¶¶ 29–31; Am. Compl. Ex. B ("Determination Letter") at 1–2, ECF No. 3-2.

Between September 17, 2025, and December 31, 2025, Plaintiff submitted four Notices of Error to Defendant alleging improper handling of her loss-mitigation application.[2]  Am. Compl. ¶¶ 24–28.  As described by Plaintiff, Defendant's improper handling included improper review of her loss mitigation application; treating the application "as a duplicate;" failing to provide timely and accurate written acknowledgment; cycling the same application between complete and incomplete statuses; seeking the same information from Plaintiff multiple times; issuing a loss-mitigation decision containing contradictory determinations; mischaracterizing Plaintiff's statements about her finances; leaving some loss-mitigation options unevaluated; and engaging in "systemic procedural manipulation."  *See id.*  Based on the forgoing, Plaintiff's Amended Complaint asserts the following claims:

Count I:  Violation of RESPA and Regulation X – Failure to Properly Respond to Notices of Error (12 U.S.C. §2605(e); 12 C.F.R. § 1024.35)

Count II:  Violation of Regulation X – Improper Loss-Mitigation Evaluation (12 C.F.R. § 1024.41)

Count III:  Pattern or Practice of Noncompliance (12 U.S.C. § 2605(f)(1)(B))

### III.  STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is

---

[2] Plaintiff did not provide copies of the Notices of Error but rather describes them in her Amended Complaint. *See* ¶¶ 24–28.

entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

When deciding a motion to dismiss under Rule 12(b)(6), the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Such a standard, however, does not require accepting any unreasonable inferences or a plaintiff's legal conclusions. *Id.* At the motion to dismiss stage, the Court may consider the face of the complaint, documents attached to the complaint, documents attached to the motion to dismiss that are integral to the complaint and whose authenticity is unchallenged, and matters of public record subject to judicial notice. *Id.*

5

## IV. ANALYSIS

For the reasons that follow, the Court finds that Plaintiff has not stated a claim on Counts I and III but has stated a claim with respect to Count II.  Defendant's Motion to Dismiss will therefore be granted in part and denied in part.

### A.  Count I Does Not State a Claim for Failure to Properly Respond to Notices of Error in Violation of RESPA

Count I of Plaintiff's Amended Complaint alleges violation of 12 U.S.C. § 2605(e) and its implementing regulations at 12 C.F.R. § 1024.35 based on Defendant's failure to adequately respond to written notices of error.  While recognizing that Freedom sent initial acknowledgement notices in response to Plaintiff's notices of error, Plaintiff avers that Defendant failed to reasonably investigate and substantively respond since it "merely restated prior determinations."  Am. Compl. ¶ 39.

"To survive a motion to dismiss, a plaintiff alleging violations of 12 U.S.C. § 2605(e) 'must allege facts to support that: (1) the defendant is a loan servicer, (2) the plaintiff sent the defendant a valid Qualified Written Request, . . . (3) the defendant failed to adequately respond within the statutory period, and (4) the plaintiff is entitled to damages." *Spangler v. U.S. Bank Tr. Co.*, 2026 WL 711682, at *9 (W.D. Va. March 13, 2026) (quoting *LaGrant v. U.S. Bank*, 2015 WL 1208967, at *7 (E.D. Va. Mar. 16, 2015)).  Section 2605(e)(1)(B) defines a Qualified Written Request (QWR) as a written correspondence that "(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  The implementing regulation at 12 C.F.R. § 1024.35 specifies "[e]rror resolution procedures" and instructs that a QWR which "asserts an error relating to the servicing of a mortgage loan is a notice of error . . . and a servicer must comply with all

6

requirements applicable to a notice of error with respect to such [QWR]." The section goes on to describe ten categories of "covered errors" in addition to a catch-all category consisting of "[a]ny other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b).

Defendant argues that Count I should be dismissed because Plaintiff's allegations concern a failure to properly evaluate a borrower for a loss mitigation option—not a RESPA servicing error such as a misapplied payment, fee, or charge. Mem. Supp. 5. The Court agrees with Defendant that Plaintiff's Amended Complaint describes a dispute about potential loan modification in Count I—not an actionable servicing issue. In *Morgan v. Caliber Home Loans, Inc.*, the Fourth Circuit explained that "'servicing' is limited to 'the receiving or making of loan payments' and is not related to 'the terms of the loan and mortgage documents.'" 26 F.4th 643, 651 (2022) (citing *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015)). "Thus, correspondence limited to the dispute of contractual issues that do not relate to the servicing of the loan, *such as loan modification applications*, do not qualify as QWRs." *Id.* (emphasis added).

Within Count I, Plaintiff lists four issues that she considers "servicing errors." Compl. ¶ 7. However, when read in context with the factual allegations and remainder of the Amended Complaint, it is apparent that Plaintiff's grievances are derived from the *outcome* of her loss-mitigation application as opposed to servicing errors. Specifically, "issuance of a defective loss-mitigation decision" and "improper removal from loss-mitigation status," at least on the facts and papers before the Court, refer to Defendant's ultimate loss mitigation determination, which offered loan modification terms to Plaintiff that she found unsatisfactory. *See* Am. Compl. ¶ 37; Determination Letter 1. Similarly, "mischaracterization of borrower statements," as far as the Court can tell, reflects Plaintiff's disagreement with Defendant's cited reasoning for not approving Plaintiff for various programs in its loss mitigation evaluation. *See id.* Because these issues are

"disputes about potential loan modifications" rather than servicing matters, Plaintiff's Notices of Error as described in her Amended Complaint do not constitute valid QWRs upon which she may base a RESPA claim. *See Morgan*, 26 F.4th at 650 (letter challenging denial of loan modification "[did] not fall within the ambit of 'servicing' so as to trigger RESPA's protections").

Although, at first blush, Plaintiff's report of "contradictory completeness determinations" comes closer to the realm of actionable loan servicing problems, the legitimate distinction between a facially complete application and a complete loss mitigation application renders this last aspect of Count I implausible such that dismissal of the entire count is appropriate. The Court understands "contradictory completeness determinations" as referencing Freedom's initial correspondence describing Plaintiff's loss mitigation application as "facially complete" and later description of the same application as "incomplete." *See* Amended Compl. ¶¶ 19–21. However, RESPA's implementing regulations expressly contemplate the possibility that a borrower submits a loss mitigation application that requires additional information and thus is technically incomplete, but the application must nevertheless be considered "facially complete" after the borrower submits missing documents and information in response to the servicer's written notice. *See* 12 C.F.R. 1024.41(c)(iv). Thus, even when the Court takes as true Plaintiff's allegations that Defendant treated the same loss mitigation application as both complete and incomplete, Plaintiff has not plausibly stated a claim allowing the Court to reasonably infer that Defendant is liable for violating RESPA.[3]

---

[3] As a final note with respect to Count I, the Court acknowledges that Plaintiff alleges having received an "incomplete" notice from Freedom dated November 18, 2025, that demanded information she had already provided by telephone on October 8, 2025. *See* Am. Compl. ¶¶ 22–23; Am. Compl. Ex. A. at 1, ECF No. 3-1. Although the Court appreciates Plaintiff's frustration with the complicated nature of the loss mitigation application process, Plaintiff has not cited, and the Court is not aware of, any authority indicating that duplicate requests for relevant financial information constitute an account servicing error for purposes of stating a RESPA claim. To the extent Plaintiff believes 12 C.F.R. 1024.41(i) provides the basis for this aspect of her claim, the Court notes that the "duplicative requests" subsection of Regulation X pertains to duplicative requests by a *borrower*—not loan servicers.

**B. Count II States a Claim for Violation of Regulation X, 12 C.F.R. § 1024.41**

In Count II, Plaintiff alleges that Freedom failed to properly evaluate her eligibility for all available loss-mitigation options as required by 12 C.F.R. § 1024.41(c). Am. Compl. ¶ 43. Defendant argues that Plaintiff fails to state a claim in Count II because she does not allege that Freedom received a complete loss mitigation application, and Freedom was under no obligation to valuate an incomplete loss mitigation application. Mem. Supp. 6–7. Freedom further argues that Count II fails to allege facts regarding how Plaintiff was damaged. *Id.* at 7. The Court disagrees on both fronts.

Although Plaintiff's Amended Complaint illustrates some confusion about how a facially complete application can still be incomplete under Regulation X, the Court is obligated to view the facts and draw all reasonable inferences in the light most favorable to Plaintiff. *See Philips*, 572 F.3d at 180. As applied here, it is plausible that Plaintiff submitted a loss mitigation application on September 14, 2025, that was incomplete. *See* Am. Compl. ¶ 18. Then, upon Defendant's request, Plaintiff provided additional information by participating in a phone interview with Defendant's representative, *see id.* ¶ 21–22, and providing the same responses in writing by letter, *id.* ¶ 23. Plaintiff alleges that, following the phone interview, "Freedom's representative confirmed that the application could proceed to review." By stating that Plaintiff's application could proceed to review, it is plausible that Defendant's representative intended to communicate either that (1) the application remained facially complete, and Freedom would continue to review it for actual completeness; or (2) Freedom would exercise its discretion to review an incomplete application. However, it is also plausible that with this ambiguous confirmation, Defendant's representative advised Plaintiff that her loss mitigation application was actually complete. The 12(b)(6) standard requires that the Court accept the plausible inference

that favors Plaintiff.  Drawing that inference, Plaintiff has stated a claim for violation of Regulation X by alleging that she submitted a complete loss mitigation application to Freedom, and further that Freedom failed to evaluate that application for all available loss mitigation options.  *See* Am. Compl. ¶ 43; Determination Letter at 1 (describing "Combination Loan Modification and Partial Claim" and "Payment Supplement Partial Claim" as "Un-Evaluated" Retention Solutions); 12 C.F.R. 1024.41(c)(1).

With regard to Defendant's challenge to Plaintiff's pleading of damages in association with Count II, Defendant appears to take issue with the causation aspect of Plaintiff's alleged damages. *See* Mem. Supp. 7.  A servicer that violates 12 C.F.R. § 1024.41 is liable to a plaintiff for actual damages caused by the violation as well as an amount not to exceed $2,000 for each violation in the case of a pattern or practice of noncompliance with the section.  12 C.F.R. § 1024.41(a); 12 U.S.C.A. § 2605(f)(1); s*ee also Mastin v. Ditech Fin.*, 2018 WL 524871, at *8 (E.D. Va. Jan. 23, 2018).  Damages are due, however, only if a plaintiff can show that her damages were a result of the RESPA violation.  *Id.* (citation omitted).

In the specific damages section of her Amended Complaint, Plaintiff pleads that, as a result of Freedom's conduct and violations, she suffered damages including prolonged delinquency, which led to the accrual of additional interest and default-related charges, as well as emotional distress related to a heightened risk of foreclosure.  Am. Compl. ¶¶ 51–53.  Plaintiff's stated damages and connection of those damages to Defendant's alleged RESPA violation(s) do not doom her otherwise well-pleaded second count.  *See Parrish v. Nationstar Mortg.*, 2026 WL 2089007, at *7 (D. Md. July 20, 2026) (court satisfied that plaintiff alleged plausible claim to recover actual damages under RESPA when his "damages claim couple[d] his alleged emotional distress with other harms."); *cf. Fox v. Statebridge Co.,* 629 F. Supp. 3d 300, 311 (D. Md. 2022)

("[E]motional distress, *without more,* does not establish the causal link necessary to show actual damages." (citing *Kareem v. PHH Mortg. Corp.*, 2022 WL 602922, at \*6 (D.N.J. Mar. 1, 2022)) (emphasis added)).

## C. Count III Does Not State a Claim for a Pattern or Practice of Noncompliance in Violation of 12 U.S.C. § 2605(f)(1)(B))

In the third and final count of her Amended Complaint, Plaintiff alleges that her experience with Defendant's "repeated failures" in determining the completeness of her application, demanding the same information from her multiple times, and issuing inconsistent loss mitigation decisions "were not isolated clerical errors" but rather are indicative of Freedom's "uniform servicing processes and template communications that repeatedly misapplied loss-mitigation and Regulation X requirements." Am. Compl. ¶¶ 47–49. Defendant argues that Plaintiff cannot rely on her own, singular experience to allege a pattern or practice of RESPA noncompliance. Mem. Supp. 8.

Although case law interpreting "pattern or practice of noncompliance" at 12 § U.S.C. 2605(f)(1)(B) is still developing, the Court agrees with Defendant that Plaintiff has not pled sufficient facts to state a claim on this count. Other courts in this circuit have accepted that "a single plaintiff in a RESPA case generally cannot rely only on his own experience to plead a pattern or practice of noncompliance." *Akkus v. Rocket Mortg., LLC*, 715 F. Supp. 3d. 726, 733 (D. Md. 2024) (citing *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d. 516, 523 (10th Cir. 2013)); *Khan v. Freedom Mortg. Corp.*, 2026 WL 2024558, at \*8 (D. Md. July 13, 2026) (finding plaintiff's "reliance upon her own experience . . . is not sufficient to show a pattern or practice of non-compliance to recover statutory damages under RESPA"). That is exactly what Plaintiff has attempted to do here. Plaintiff speculates based on her own interactions with Defendant that the issues she perceives reflect "systemic deficiencies." Am. Compl. ¶ 49. The Court finds this theory

11

implausible absent additional factual support beyond Plaintiff's limited personal experience.  *See*

*Akkus*, 715 F. Supp. 3d. at 733 (finding allegations sufficient to show pattern or practice of

noncompliance at motion-to-dismiss stage of litigation when Plaintiffs were two separate couples

alleging that they and other class members have suffered similar violations in loan servicing).

Accordingly, the Court will dismiss Count III of the Amended Complaint, and Plaintiff will be

precluded from seeking statutory damages pursuant to 12 U.S.C. § U.S.C. 2605(f)(1)(B).  *See*

*Parrish*, 2026 WL 2089007, at *7.

## V. CONCLUSION

For the reasons described herein, Defendant's Motion to Dismiss will be granted with

respect to Counts I and III of Plaintiff's Amended Complaint and denied with respect to Count II.

An appropriate order shall issue.

_____/s/_____
Roderick C. Young
United States District Judge

Date:  August 10, 2026
Richmond, Virginia