FILED
09/16/2026
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| **SAMANTHA GEMMA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 3:26CV95 (RCY)** |
| | ) | |
| **FREEDOM MORTGAGE CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ORDER DIRECTING PLAINTIFF TO CEASE AND DESIST DIRECT COMMUNICATIONS**

## INTRODUCTION

Freedom says it had "no choice" but to ask this Court to restrain Plaintiff's communications. Its own memorandum demonstrates otherwise. Freedom expressly concedes that "neither the Virginia Rules of Professional Conduct nor the Local Rules of this Court extend" the no-contact prohibition of Virginia Rule of Professional Conduct 4.2 to a nonlawyer pro se litigant. Def.'s Mem. 2, ECF No. 21. That concession should end the effort to portray Plaintiff's past conduct as a violation of Rule 4.2.

The Motion attempts to bridge that gap with two propositions no one disputes: federal courts possess inherent authority to manage proceedings, and pro se litigants must follow the rules that actually govern them. But neither proposition supplies the missing rule. A general duty to obey court rules cannot transform counsel's private instruction into a court order, and inherent authority is not a mechanism for rewriting a professional-conduct rule that, by its text, governs lawyers.

The mismatch becomes sharper because the recipients Plaintiff identified contemporaneously as Freedom's in-house litigation counsel were not unrepresented lay employees. Virginia Legal Ethics Opinion 1890 - approved by the Supreme Court of Virginia -

states that even an opposing lawyer is generally permitted to communicate directly with a corporate adversary's in-house counsel despite the corporation's retention of outside counsel. Va. Legal Ethics Op. 1890 secs. 5, 9 (approved Jan. 6, 2021). Freedom does not address that authority.

Nor does the factual record resemble the misconduct cases Freedom cites. The exhibits show two communications involving Freedom personnel. The September 4 communication openly copied outside counsel. The September 8 communication was addressed to Freedom's outside counsel, with an in-house recipient blind-copied; the recipient immediately forwarded it to outside counsel. Freedom nevertheless describes Plaintiff as secretly blind-copying representatives on "emails," claims she said the rules did not apply to her, and labels the conduct "exceptionally egregious." Def.'s Mem. 1, 3-4. Freedom's own exhibits do not support those characterizations.

Plaintiff does not ask the Court to endorse every phrase used during a contentious settlement exchange. The question presented by Freedom's Motion is narrower: whether those communications violated an existing rule or constitute misconduct warranting the sweeping order requested. They did not, and they do not.

## FACTUAL RECORD

On September 4, 2026, Sarah Mattingly wrote Plaintiff: "Before sending this to the client, I need to understand" whether Plaintiff was agreeable to other settlement terms and requested a summary of alleged damages. ECF No. 21-1 at 3. Plaintiff then forwarded the settlement correspondence to the Freedom attorneys she identified as in-house litigation counsel and copied Mattingly on the email. Id. at 1-2. The message itself explained why: Mattingly's own wording made transmission appear contingent on further answers. Id. at 1. Whatever one thinks of that explanation, the communication was not concealed from outside counsel; Mattingly was expressly copied.

Mattingly responded that Plaintiff had "no right" to contact Freedom and directed that all litigation correspondence come through Dinsmore. ECF No. 21-1 at 1. Plaintiff did not respond that court rules were optional. She asked counsel to identify the rule or court order supposedly violated. Id. That is materially different from Freedom's present assertion that Plaintiff "advised that she did not believe the rules applied to her." Def.'s Mem. 3.

On September 8, Hooe resumed settlement communications and expressly stated: "We have discussed this additional correspondence with Freedom." ECF No. 21-3 at 3. Plaintiff replied directly to Hooe. One or more Freedom recipients were blind-copied. ECF No. 21-2 at 2. A Freedom recipient promptly forwarded the email to Mattingly, stating that Plaintiff was "Bccing" him and "presumably others." Id. Thus, outside counsel received the same substantive communication; what the BCC concealed was the additional recipient's identity, not the substance of Plaintiff's message.

Hooe then accused Plaintiff of "blind copying them on emails" and characterized the conduct as serious. ECF No. 21-3 at 2. Plaintiff answered that there had been two communications to Freedom's attorneys and that only one had been blind-copied, again asking counsel to identify the rule or order allegedly violated. ECF No. 21-4 at 1. Freedom's submission identifies no later direct contact after that exchange.

## ARGUMENT

### I. FREEDOM CONCEDES THAT RULE 4.2 DOES NOT GOVERN PLAINTIFF, AND VIRGINIA'S OWN ETHICS AUTHORITIES CONFIRM WHY.

Virginia Rule of Professional Conduct 4.2 begins with the words: "In representing a client, a lawyer shall not communicate" about the subject of a representation with a person the lawyer knows to be represented in the matter, absent consent or legal authorization. Va. R. Prof'l Conduct 4.2 (emphasis added). The Eastern District incorporates Section II of Part Six of the Rules of the Supreme Court of Virginia as the ethical standards "relating to the practice of law"

in civil cases. E.D. Va. Loc. Civ. R. 83.1(J). Freedom therefore correctly admits that neither Rule 4.2 nor the Local Rules extends the lawyer no-contact prohibition to Plaintiff, a nonlawyer proceeding pro se. Def.'s Mem. 2.

That distinction is not accidental. Current Comment [4] to Rule 4.2 expressly provides that "parties to a matter may communicate directly with each other." Va. R. Prof'l Conduct 4.2 cmt. [4]. LEO 1890 carefully distinguishes a self-represented lawyer from an ordinary nonlawyer party: section 4 explains that Rule 4.2 applies when the communicating lawyer is self-represented; section 5 explains that represented persons themselves may communicate directly. Va. Legal Ethics Op. 1890 secs. 4-5. Plaintiff is not a self-represented lawyer.

Freedom's own exhibit exposes the legal error. One Freedom recipient asserted that Plaintiff's conduct "violates her obligation for lawyers (or those acting pro se) to not directly contact parties when represented by counsel." ECF No. 21-2 at 2. Virginia authority draws exactly the distinction that parenthetical erases: Rule 4.2 may bind a lawyer acting pro se, but it does not thereby become a disciplinary rule for every nonlawyer who represents herself.

There is an additional problem. LEO 1890 section 9 states that "the fact that an organization has outside counsel in a particular matter does not prohibit another lawyer from communicating directly with in-house counsel for the organization." Va. Legal Ethics Op. 1890 sec. 9. The opinion explains that the dangers underlying Rule 4.2 - exploitation of an uncounseled person and interference with the attorney-client relationship - are not implicated when the recipient is the organization's own lawyer. Id. Thus, even an opposing lawyer is generally permitted to communicate with corporate in-house counsel despite outside counsel's retention. Freedom offers no explanation why a nonlawyer party's email to those same in-house lawyers becomes "exceptionally egregious" conduct.

Plaintiff also does not rely on Mattingly's "Before sending this to the client" language as though suspicion that counsel withheld a settlement communication would create a lawyer's right

to bypass opposing counsel. LEO 1890 section 13 expressly rejects that proposition for lawyers. But section 13 does not rescue Freedom: Plaintiff is not a lawyer, and the recipients at issue were the in-house lawyers whom section 9 specifically treats differently. The Motion invokes Rule 4.2 while omitting the portions of Virginia's approved ethics opinion most directly addressing the conduct at issue.

## II. THE AUTHORITIES FREEDOM CITES ESTABLISH JUDICIAL POWER; THEY DO NOT SUPPLY THE MISSING MISCONDUCT.

There is no dispute that this Court possesses inherent authority to manage litigation. But the Fourth Circuit has emphasized that inherent power, because of its breadth and susceptibility to abuse, "must be exercised with the greatest restraint and caution, and then only to the extent necessary." United States v. Shaffer Equip. Co., 11 F.3d 450, 461-62 (4th Cir. 1993). The existence of judicial power therefore does not answer the dispositive question: what conduct on this record warrants its exercise?

Freedom's cases underscore the gap. Sanderson involved an attorney who deliberately contacted the employer of the opposing party's designated expert, set in motion events that caused the expert to withdraw, and was found to have violated Virginia Rule of Professional Conduct 3.4(a) by obstructing access to evidence. Sanderson v. Boddie-Noell Enters., Inc., 227 F.R.D. 448, 451-54 (E.D. Va. 2005). Here there is no witness interference, no discovery circumvention, and no identified violation of a rule of professional conduct.

CareFirst likewise concerned the court's sanctioning authority in the face of litigation conduct the court described as "extraordinary" and addressed through Rule 11, local sanctioning authority, and inherent power. CareFirst of Md., Inc. v. First Care, P.C., 422 F. Supp. 2d 592, 597-600 (E.D. Va. 2006). Citation to the existence of inherent authority cannot substitute for a comparable factual predicate.

Stephenson is farther afield still. There, this Court dealt with pro se defendants who asserted compulsory counterclaims after filing an answer and without court authorization, contrary to Federal Rule of Civil Procedure 13(a)(1). Stephenson v. Simmonds, No. 3:25CV860 (RCY), Mem. Op. 4-5 (E.D. Va. May 13, 2026), ECF No. 36. Judge Young then reminded those litigants that pro se parties must comply with the Federal and Local Rules. Id. at 5. Plaintiff agrees. The problem for Freedom is antecedent: unlike Stephenson, Freedom identifies no Federal Rule, Local Rule, professional-conduct rule applicable to Plaintiff, or prior order that Plaintiff violated.

A closely analogous federal decision illustrates the point. In ING Bank, fsb v. Fazah, a represented mortgage lender asked the court to order a nonlawyer pro se defendant to cease direct contact, arguing that a state professional-conduct rule prohibiting lawyer contact with represented parties should be applied to him. The court rejected the argument because the professional rule applied to lawyers, the defendant was not a lawyer, and the lender had not shown substantial justification for a protective or restraining order. No. CIV S-09-1174 WBS EFB PS, ECF No. 25, at 6-7 (E.D. Cal. Nov. 16, 2009). That decision is not controlling, but its reasoning addresses the precise logical step missing from Freedom's Motion.

**III. FREEDOM'S OWN EXHIBITS MATERIALLY UNDERCUT ITS DESCRIPTION OF PLAINTIFF'S CONDUCT.**

Freedom's Motion repeatedly relies on adjectives where the record requires precision. Three examples matter.

First, the September 4 communication was not hidden from outside counsel. Mattingly was copied on the email. ECF No. 21-1 at 1-2. Second, the September 8 message was sent directly to Hooe. ECF No. 21-2 at 2. The BCC concealed the identity of an additional recipient from Hooe; it did not conceal the email's substance from her. Third, Freedom repeatedly uses the plural - Plaintiff allegedly began "blind copying Freedom's representatives on emails," Def.'s

Mem. 1, and Hooe accused her of "blind copying them on emails," ECF No. 21-3 at 2 - while the exhibits identify one BCC event. Plaintiff contemporaneously pointed out that exact distinction. ECF No. 21-4 at 1.

The Motion also recasts Plaintiff's request for legal authority as a declaration that rules do not apply to her. It states that Plaintiff "advised that she did not believe the rules applied to her." Def.'s Mem. 3. The attached email instead says that counsel had been asked to identify "the rule or order supposedly violated and still has not done so." ECF No. 21-4 at 1. A litigant asking an attorney to identify the legal basis for a threatened motion is not refusing to follow a court rule. The distinction is especially significant where Freedom now concedes that the professional rule counsel had invoked does not extend to Plaintiff.

Plaintiff's September 8 phrasing was pointed and colloquial. The Court need not approve of it. But tone is not the same thing as harassment, witness interference, discovery abuse, violation of a court order, or professional misconduct. Freedom identifies no threat, no attempt to obtain privileged information, no effort to bypass discovery, and no continued direct contact after Hooe threatened court intervention. Calling the exchange "exceptionally egregious" does not make it so.

**IV. BECAUSE FREEDOM PUT THE SETTLEMENT EMAILS AT ISSUE, THE COURT MAY CONSIDER THEIR CONTEXT FOR THIS NON-LIABILITY PURPOSE.**

Freedom attached the settlement correspondence because the communications themselves are the asserted misconduct. Plaintiff relies on them for that same limited purpose: to establish what was said, who was copied, what was concealed, and whether Freedom's characterization of the exchange is accurate. Plaintiff does not offer the correspondence to prove liability on her RESPA claims or the amount of those claims.

Rule 408 does not prohibit settlement material for every purpose; it bars specified uses to prove or disprove the validity or amount of a disputed claim. Fed. R. Evid. 408(a)-(b). The

Fourth Circuit has accordingly permitted consideration of settlement material when offered for another relevant purpose rather than to establish liability or damages. Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc., 973 F.2d 349, 353-54 (4th Cir. 1992). Freedom itself chose to place the communications before the Court. The Court may read the portions relevant to the alleged misconduct in their actual context.

**V. THE RELIEF FREEDOM REQUESTS IS BROADER THAN THE CONDUCT IT COMPLAINS OF AND RISKS INTERFERING WITH ORDINARY MORTGAGE SERVICING.**

Freedom does not merely request that future settlement negotiations pass through counsel of record. It asks the Court to prohibit "all direct communications with Freedom representatives pertaining to the above-styled action" and to require "all correspondence" to be transmitted through counsel. Def.'s Mem. 4. That language is materially broader than the two settlement-related communications on which the Motion is based.

This case concerns the servicing and loss-mitigation administration of Plaintiff's mortgage loan. Regulation X itself contemplates direct borrower communications with a servicer, including Notices of Error under 12 C.F.R. sec. 1024.35 and loss-mitigation submissions and communications under 12 C.F.R. sec. 1024.41. A blanket prohibition on communications with any Freedom "representative" concerning matters that "pertain" to this action could create needless uncertainty over whether Plaintiff may communicate with Freedom's servicing, payment, loss-mitigation, regulatory-response, or document-processing personnel about the mortgage account.

If the Court concludes that a prospective litigation-communication protocol would assist case management, Plaintiff will comply with the protocol the Court actually orders. But any such order should be prospective, should not rest on a finding that Plaintiff violated Rule 4.2 or an existing Court order, and should be narrowly limited to litigation and settlement communications while expressly preserving ordinary mortgage-servicing, payment, loss-mitigation, regulatory,

and document-submission communications. That narrow alternative would address any legitimate case-management concern without adopting Freedom's unsupported characterization of past conduct.

**CONCLUSION**

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion for Order Directing Plaintiff to Cease and Desist Direct Communications with Freedom Representatives. In the alternative, if the Court elects to prescribe a prospective communication protocol, Plaintiff requests that the Court make no finding of prior misconduct and narrowly limit any order to litigation and settlement communications, expressly excluding ordinary mortgage-servicing, payment, loss-mitigation, regulatory, and document-submission communications.

Respectfully submitted,



Samantha Gemma
8002 S Woods Dr
Fredericksburg, VA 22408
Samanthagemma1@gmail.com
*Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September 2026, I served a true and correct copy of the foregoing Plaintiff's Opposition to Defendant's Motion for Order Directing Plaintiff to Cease and Desist Direct Communications with Freedom Representatives by electronic mail upon counsel for Defendant at the following address:

Laura May Hooe, Esq.
Klein Thomas Lee & Fresard
Three James Center
1051 E. Cary St., Suite 1430
Richmond, VA 23219
Laura.hooe@kleinthomaslaw.com

______________________________
Samantha Gemma
*Plaintiff*